

David McCraw
Vice President & Deputy
General Counsel

T 626 556 4031

mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

July 26, 2023

**VIA ECF**

Hon. J. Paul Oetken
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *The New York Times Company v. Federal Bureau of Investigation*,
      No. 22 Civ. 3590 (JPO)

Dear Judge Oetken:

I am legal counsel to The New York Times Company ("The Times") in the above-referenced action brought against the Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I write in response to the Court's order dated July 5, 2023 inviting the parties to address whether and how "certain public disclosures in or around March 2023 regarding the causes of 'Havana Syndrome' … may affect the justiciability or merits of this FOIA matter," in which The Times seeks access to the FBI Behavioral Analysis Unit's ("BAU") report on Havana Syndrome. (ECF Nos. 34, 36.)

The Court's July 5 order cited two examples of March 2023 disclosures: a statement by Director of National Intelligence ("DNI") Avril D. Haines issued on March 1, 2023 and a Washington Post news article published the same day.[1]

The disclosures the Court cites only reinforce that the BAU report should be disclosed. First, the DNI statement makes clear that the intelligence community has reached the consensus that no crime was committed in connection with Havana Syndrome, a term for the "anomalous health incidents" ("AHIs") that

---

[1] The Court's footnote stated, "*E.g.*, DNI Statement on the Intelligence Community Assessment on AHIs (March 1, 2023), https://www.dni.gov/index.php/newsroom/press-releases/press-releases-2023/item/2361-dni-statement-on-the-intelligence-community-assessment-on-ahis; Shane Harris and John Hudson, "'Havana Syndrome' Not Caused by Energy Weapon Or Foreign Adversary, Intelligence Review Finds" (March 1, 2023), https://www.washingtonpost.com/national-security/2023/03/01/havana-syndrome-intelligence-report-weapon/."

1

over 1,000 U.S. personnel and their families reported experiencing while on assignment abroad. Among other things, the DNI states, "[M]ost IC [intelligence community] agencies have now concluded that it is 'very unlikely' a foreign adversary is responsible for the reported AHIs." "IC agencies assess that symptoms reported by US personnel were probably the result of factors that did not involve a foreign adversary, such as preexisting conditions, conventional illnesses, and environmental factors."

The FBI asserts that the materials cited by the Court do not officially disclose the contents of the BAU report. But the public disclosures the Court references make it unlikely that the FBI's assertion of exemptions 7(A) and 7(E) is either logical or plausible.

The second example the Court cites, a Washington Post news article headlined "'Havana Syndrome' Not Caused by Energy Weapon Or Foreign Adversary, Intelligence Review Finds" (the "Article") relays similar information to the DNI Statement. The Article reports that seven intelligence agencies reviewed approximately 1,000 cases of the reported AHIs and five of those agencies determined it was "'very unlikely' that a foreign adversary was responsible for the symptoms." The Article quotes Central Intelligence Agency ("CIA") Director William J. Burns as saying that analysts had conducted "one of the largest and most intensive investigations in the Agency's history. I and my leadership team stand firmly behind the work conducted and the findings."

I. The FBI's Justifications for Withholding the BAU Report are Neither Logical Nor Plausible

    A. The New Disclosures Further Show that the FBI Has Not Established that Exemption 7(A) Applies

To justify withholding under Exemption 7(A), the agency must show "that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To meet that standard, an agency must introduce facts showing that (1) a law enforcement proceeding is pending or prospective; and (2) that release of information about it could reasonably be expected to cause some articulable harm. *Kay v. FCC*, 976 F.Supp. 23, 37 (D.D.C. 1997), *aff'd without op.*, 172 F.3d 919 (D.C. Cir. 1998).

The DNI statement unequivocally states that the majority of intelligence agencies have concluded it is highly unlikely that Havana Syndrome was a result of criminal activity. By logical extension, it is highly unlikely that any criminal proceedings related to Havana Syndrome are ongoing or likely to occur in the future, which renders exemption 7(A) inapplicable here.

The only evidence from the DNI statement the FBI relies upon for its argument that 7(A) applies is the following italicized excerpt. The Times includes the context surrounding that excerpt:

> "We are sincerely grateful to those who came forward as it helped to not only shape our response, but identify areas where we need to improve our medical and counterintelligence protocols, which remains an ongoing process. *This work will and must endure*."

This statement falls far short of what is required to establish that exemption 7(A) applies. It appears to largely be an expression of sympathy for individuals who reported experiencing AHIs. The only thing DNI suggests is "ongoing" is an effort to improve "protocols." It does not establish that there are "pending or prospective" law enforcement proceedings.

### B. The New Disclosures Also Under the FBI's Reliance on Exemption 7(E)

The materials cited by the Court also advance The Times's argument in another way. Exemption 7(E) requires the agency to prove that the records would disclose law enforcement techniques or procedures. *See* 5 U.S.C. § 552(b)(7)(E). But Exemption 7(E) does not apply to all investigative and law enforcement techniques. To gain Exemption 7(E)'s protection, an agency must set forth facts showing that the record would reveal techniques and procedures not "already well-known to the public." *Founding Church of Scientology of D.C. v. NSA*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979).

As set out previously, it appears that much of the BAU's work involved reviewing and analyzing medical records prepared by civilian hospitals, techniques and procedures that are not unique to law enforcement and that are well-known. (ECF. No. 25 at 15.) To the extent some material meets Exemption 7(E), redaction—not wholesale withholding—is the appropriate remedy.

The DNI statement only reinforced this. The statement hyperlinks to two additional documents from the National Intelligence Council: one document titled "Updated Assessment of Anomalous Health Incidents" and the other titled "[REDACTED] IC Targeting and Collection Efforts Point Away from Adversary Involvement in Anomalous Health Incidents." The latter document, although redacted, describes the techniques used to investigate reports of Havana Syndrome, identifying which techniques are "FBI-specific activity in the United States," among them:

- ❖ "Opened a full criminal investigation to investigate possible assault on US Government officials."
- ❖ "Opened full investigation into a third-country [REDACTED] to determine validity of potential reported knowledge of Russian involvement in AHI."
- ❖ "Queried FBI technical holdings [REDACTED]."
- ❖ "Conducted technical survey [REDACTED], including review of the feasibility of an external signal specifically impacting a small localized area."

To the extent that any of these items are techniques that the FBI has claimed earlier in this litigation must be kept secret, that position is no longer tenable in light of the disclosures. Further, the document illustrates that targeted redaction is possible to protect the interests contemplated by exemption 7(E) and that the FBI's blanket withholding the entire BAU report is not warranted.

The Times respectfully refers the Court to its summary judgment submissions for a fuller explication of its position.

We thank the Court for its consideration of this submission.

Respectfully submitted,


*/s/ David E. McCraw*
David E. McCraw

cc: Christine Poscablo, AUSA
    (via ECF)