UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――
THE NEW YORK TIMES COMPANY,
                         Plaintiff,

               -v-

FEDERAL BUREAU OF
INVESTIGATION,
                         Defendant.
―――――――――――――――――――――――――――――――

22-CV-3590 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff The New York Times Company ("the Times") brings this action against Defendant the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Times seeks a copy of a report from the FBI's Behavioral Analysis Unit ("BAU") on the phenomenon known as "Havana Syndrome." The parties have cross-moved for summary judgment on the question whether the requested document is exempt from disclosure under FOIA Exemptions 6, 7(A), 7(C), and 7(E), 5 U.S.C. § 552(b)(6) and (7). For the reasons that follow, both parties' motions are denied, subject to *in camera* review.

**I.    Background**

      "Havana Syndrome" is a phenomenon in which U.S. officials staffed at diplomatic posts abroad have reported strange and unexplained noises, followed shortly thereafter by several medical symptoms, including "cognitive, vestibular, and oculomotor dysfunction as well as sleep disorder and headache." (ECF No. 25 at 1 – 2 (quoting *Havana, Cuba Accountability Review Board Report*, U.S. Dep't of State (June 2018) ("ARB Report").)[1] The first reports of Havana

―――――――――――――

[1] Under Federal Rule of Evidence 201(b), the Court may take judicial notice of facts "that [are] not subject to reasonable dispute" because they are "generally known within the trial

1

Syndrome originated in Havana, Cuba in December 2016. (*Id.*) Later, U.S. personnel in other countries, including China, Russia, and Uzbekistan, reported experiencing the same symptoms. (*Id.*)

In 2021, news outlets reported that the FBI had launched an investigation into the causes of Havana Syndrome through its BAU. (ECF No. 26-2 at 5 ("New Yorker Article").) Those press reports stated that the FBI had concluded that Havana Syndrome was a "mass psychogenic illness," rather than the result of an attack from an external source. (*Id.*)[2] The federal government has officially acknowledged the existence of the Havana Syndrome phenomenon, with agencies including the Department of State, the Centers for Disease Control and Prevention, the Central Intelligence Agency, and the Office of the Director of National Intelligence releasing some information regarding findings from their own investigations. (ECF No. 25 at 3 – 6.)

On December 9, 2021, the Times submitted a FOIA request to the FBI seeking a copy of the BAU Report. (*Id.* at 6.) Ultimately, the FBI declined to produce the report, citing Exemptions 7(A) and 7(E) and relying in part on Exemptions 6 and 7(C). (*Id.*) The FBI also consulted the Department of State about the release of the BAU Report. (ECF No. 21 ¶ 8.) The Department of State originally asserted FOIA Exemptions 7(C) and 7(E), but ultimately withdrew its assertion of the latter. (*Id.* ¶¶ 8, 11.)

The Times commenced this proceeding with the filing of a complaint on May 4, 2022. (ECF No. 1.) The FBI filed its motion for summary judgment on November 10, 2022. (ECF

---

court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

[2] The Court takes judicial notice of the content of public reporting and disclosures about Havana Syndrome for the fact of their existence and not for the truth of their contents. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008). The FBI "does not confirm or deny the content of the BAU Report, which has not been officially disclosed or acknowledged by the FBI." (ECF No. 21 ¶ 9.)

No. 20.) In support of its motion, it has submitted two non-classified declarations from Michael G. Seidel, Section Chief of the Record/Information Dissemination Section within the FBI's Information Management Division (ECF Nos. 21, 31) and two classified declarations from Alan E. Kohler, Assistant Director of the FBI's Counterintelligence Division. The latter declarations were submitted *ex parte*, for the Court's *in camera* review. The Times filed its cross-motion for summary judgment on December 9, 2022. (ECF No. 24.)

On July 5, 2023, the Court invited the parties to submit letters explaining whether certain public disclosures[3] in or around March 2023 regarding the causes of Havana Syndrome affect the justiciability or the merits of this case. (ECF No. 34.) The parties filed responses at ECF Nos. 37 and 38, which largely reflect the same arguments in their original motions.

## II. Legal Standard

### A. Summary Judgment

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007) (citation omitted). A moving party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect

---

[3] *E.g.*, DNI Statement on the Intelligence Community Assessment on AHIs (March 1, 2023), https://www.dni.gov/index.php/newsroom/press-releases/press-releases-2023/item/2361-dni-statement-on-the-intelligence-community-assessment-on-ahis; Shane Harris and John Hudson, "'Havana Syndrome' Not Caused by Energy Weapon Or Foreign Adversary, Intelligence Review Finds" (March 1, 2023), https://www.washingtonpost.com/nationalsecurity/2023/03/01/havana-syndrome-intelligence-report-weapon/.

the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). When there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

**B.     FOIA**

The FOIA statute "reflects 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Seife v. United States Food & Drug Admin.*, 43 F.4th 231, 234 (2d Cir. 2022) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)). Therefore, "upon request, FOIA mandates disclosure of records held by a federal agency . . . unless the documents fall within enumerated exemptions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force*, 425 U.S. at 361. The exemptions, then, are given a "narrow compass." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

"An agency withholding documents responsive to a FOIA request bears the burden of proving the applicability of claimed exemptions." *ACLU v. Dep't of Just.*, 681 F.3d 61, 69 (2d Cir. 2012) (citation omitted). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.* (citation omitted). That being said, "[a]ll doubts are resolved in favor of

4

disclosure." *Seife*, 43 F.4th at 235 (quoting *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010)).

In a FOIA case, summary judgment is appropriate when the agency's declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *ACLU v. DOJ*, 901 F.3d at 133. *See also ACLU v. United States Department of Defense*, 901 F.3d 125, 133 (2d Cir. 2018), as amended (Aug. 22, 2018) ("Thus, the agency's justification is sufficient if it appears logical and plausible.") (citation omitted).

In 2016, Congress passed the FOIA Improvement Act ("FIA") "out of concern that some agencies [were] overusing FOIA exemptions." *Seife*, 43 F.4th at 235 (citation omitted). Under the FIA, an agency is permitted to withhold information only if it falls within a FOIA exemption and at least one of two additional requirement is met. The requirements are that:

   (I) the agency reasonably foresees that disclosure would harm an interest protected
       by an exemption described in subsection (b); or

   (II) disclosure is prohibited by law.

5 U.S.C. § 552(a)(8)(A)(i)(I)-(II). The Second Circuit has described the FIA as imposing "an additional, independent burden on the agency." *Seife*, 43 F.4th at 235.

Finally, the FOIA statute mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "This provision requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes." *Seife*, 298 F. Supp. 3d at 629.

### III.     Discussion

#### A.      Exemption 7(A)

The FBI asserts that the entire BAU Report is exempt from disclosure under Exemption 7(A). Under this exemption, agencies may withhold records compiled for law enforcement purposes, the disclosure of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify withholding, the agency must show that: "(1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *New York Times Co. v. United States Dep't of Just.*, 390 F. Supp. 3d 499, 513 (S.D.N.Y. 2019). While Exemption 7(A) does not require the government to make a "specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding," *id.* (citation omitted), "the government must 'allow[ ] the court to trace a rational link between the nature of the document and the alleged likely interference.'" *Id.* (citation omitted).

As a threshold matter, the BAU Report was compiled for law enforcement purposes, given that it was prepared as part of the FBI's investigation into Havana Syndrome. (ECF No. 21 ("Seidel Declaration") ¶ 15.) *See New York Times Co. v. DOJ*, 390 F. Supp. 3d 499, 514 (S.D.N.Y. 2019) ("[T]he term 'compiled' in exemption 7 is broad; it requires only that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption.") (citations omitted).

In its public filings, the FBI represents that disclosure poses a risk of harm because its investigation into Havana Syndrome is ongoing and disclosure would risk disrupting "any potential prosecutions that could arise as a result of the counterintelligence investigation." (ECF No. 21 ¶ 20.) It also represents that disclosure would "jeopardize an ongoing investigation by disclosing what specific information the FBI knew and did not know at the time the Report was

6

drafted and the conclusions reached as a result." (ECF No. 31 ¶ 5.) The Court has also reviewed the representations that the FBI has presented on the risk of harm in the two classified Kohler Declarations.

Having considered the FBI's submissions, and according them the presumption of good faith to which they are entitled, the Court concludes that the agency has failed to carry its burden to provide a "logical and plausible" justification for the application of Exemption 7(A). *ACLU*, 901 F.3d at 133. Withholding is appropriate only if the release of the BAU Report "could *reasonably* be expected to cause some articulable harm," *New York Times Co.*, 390 F. Supp. 3d at 513 (emphasis added). The FBI has not identified a rational link from the content of the BAU Report, as represented in its affidavits, to a reasonable expectation of interference in the ongoing investigation. To the extent that the FBI justifies withholding because the Report could "provide substantial information about what the FBI knew and did not know regarding Anomalous Health Incidents at the time the BAU Report was drafted" (ECF No. 21 ¶ 20), the Court finds that this does not logically relate to harm to an ongoing investigation. Media reports indicate that the Report was drafted sometime in or before 2021; disclosing what the FBI did or did not know at least two years ago implies little plausible risk to the ongoing investigation. The Court has also considered the representations made on pages 4 and 5 of the first Kohler Declaration, at paragraphs 7 to 9, and the representation on page 2 of the second Kohler Declaration at paragraph 5. It finds those justifications to be unpersuasive, for the same reasons.

Additionally, "Exemption 7(A) is temporal in nature." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1097 (D.C. Cir. 2014). "Disclosure of the information [the requester] seeks cannot interfere with parts of the enforcement proceeding already concluded." *Id.* (quoting *North v. Walsh*, 881 F.2d 1088, 1100 (D.C. Cir. 1989)). The

Court takes judicial notice of the Intelligence Community Assessment published by the Office of the Director of National Intelligence (DNI), which states that "most IC agencies have now concluded that it is 'very unlikely' a foreign adversary is responsible for the reported AHIs," and also discloses that the FBI was involved in the preparation of that assessment.[4] This, combined with the FBI's representation at page 3 paragraph 7 of the first Kohler Declaration, call into question whether the exemption applies, especially given that "vague mentions of ongoing proceedings are not enough to support Exemption 7(A)." *Majuc v. United States Dep't of Just.*, No. 1:18-CV-00566, 2019 WL 4394843, at *2 (D.D.C. Sept. 13, 2019).

The FBI's motion for summary judgment is therefore denied as to the 7(A) Exemption because it has not met its burden to justify withholding.

B.   **Exemption 7(E)**

Under Exemption 7(E), agencies may withhold records compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Techniques and procedures . . . refers to how law enforcement officials go about investigating a crime." *Knight First Amend. Inst.*, 30 F.4th at 329. Courts in this district have construed Exemption 7(E) to apply only to "investigative techniques not generally known

---

[4] *See* "DNI Statement on the Intelligence Community Assessment on AHIs," (March 1, 2023), https://www.dni.gov/index.php/newsroom/press-releases/press-releases-2023/item/2361-%20dni-statement-on-the-intelligence-community-assessment-on-ahis; "IC Targeting and Collection Efforts Point Away from Adversary Involvement in Anomalous Health Incidents," (March 1, 2023),
https://www.dni.gov/files/ODNI/documents/assessments/IC_Targeting_and_Collection_Efforts_Point_Away_From_Adversary_Involvement_in_Anomalous_Health_Incidents.pdf.

to the public." *ACLU v. DOJ*, No. 12 CIV. 7412, 2014 WL 956303, at *7 (S.D.N.Y. Mar. 11, 2014).

The FBI asserts that disclosure would "reveal non-public information about the BAU's techniques and procedures for conducting behavioral analysis." (ECF No. 31 ¶ 3.) As to the Times's argument that the FBI should release, at minimum, facts such as when the investigation was commenced; how long the investigation lasted; when the final report was published; and what type of information investigators considered, the FBI responds that this would reveal "not only the techniques and procedures the BAU used in performing its behavioral analysis, but also the specific application of those techniques and procedures in particular circumstances." (*Id.* ¶ 11.)

The FBI's representations are at too high a level of generality to justify withholding. First, as the Times argues, the FBI has made some techniques employed by the BAU public through its own website and publications. (*See* ECF No. 33 at 7.) And in the context of Havana Syndrome, the DNI's March 2023 disclosures reveal some investigative steps the FBI took within the U.S., including "conduct[ing] a technical survey [REDACTED], including review of the feasibility of an external signal specifically impacting a small localized area."[5] Second, while the FBI describes the techniques at issue in this case as "non-public," it does so in a vague and conclusory manner. For example, the agency asserts that release of the report would reveal "FBI methodologies utilized as tradecraft for intelligence analysis" or how the BAU "collects

---

[5] "IC Targeting and Collection Efforts Point Away from Adversary Involvement in Anomalous Health Incidents" at 4, (March 1, 2023), https://www.dni.gov/files/ODNI/documents/assessments/IC_Targeting_and_Collection_Efforts_Point_Away_From_Adversary_Involvement_in_Anomalous_Health_Incidents.pdf. The FBI argues that this document "mentions the FBI several times but does not reveal the FBI's views or the contents of the BAU Report." (ECF No. 37-1 ¶ 11.)

information in response to certain events and the steps the BAU takes to analyze that information." (ECF No. 22 at 11.) The Court cannot determine whether any, some, or all of the techniques employed to produce the BAU Report are generally known to the public. The FBI has therefore failed to carry its burden to "describe the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *ACLU v. DOJ*, 901 F.3d at 133.

While true that courts do not require agencies to provide a "highly specific" justification of how the law will be circumvented for the purposes of Exemption 7(E), they are required to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011). This standard is particularly important here, where the document at issue would presumably involve multiple types of investigative techniques due to the intersection of the victims' reported health symptoms and the intelligence investigation into the causes. It is unclear to what extent the BAU Report contains health-related analysis that is entirely distinct from information on "how law enforcement officials go about investigating a crime." The former would seem to have little logical connection to a risk that future bad actors could circumvent the law, especially given extensive public disclosures about the victims' health symptoms.

The FBI has therefore failed to justify withholding under Exemption 7(E).

C.  **Exemptions 6 and 7(C)**

The FBI has invoked Exemptions 6 and 7(C) to withhold (1) the names and phone numbers of FBI Special Agents who performed "coordinating/completing tasks" in support of the creation of the BAU Report; (2) information on the "locations where victims lived and work and information related to their health, including references to medical reports and records"; and (3) "the title and/or affiliation of specific witnesses at the United States Embassy in

Havana, Cuba, who had spoken to or parties who were mentioned to the FBI in connection with the FBI's investigation related to Havana Syndrome." (ECF No. 21 ¶¶ 32, 35, 38.) The Times does not dispute the application of Exemptions 6 and 7(C) to this information and instead argues that these provisions do not justify withholding the Report in its entirety. Thus, the FBI has properly invoked Exemptions 6 and 7(C) for the narrow purpose of withholding those three categories of information.

### D. *In Camera* Review

The FBI has failed to carry its burden as to the application of Exemptions 7(A) and 7(E), which justifies the denial of its motion for summary judgment. However, the Court is not permitted to grant the Times' cross-motion at this juncture, given that genuine disputes of material fact remain in the case. Specifically, there is a genuine dispute as to (1) whether the contents of the BAU Report plausibly relate to an ongoing investigation or parts of a law enforcement proceeding that have already concluded; (2) whether the FBI is premising withholding on investigative techniques that are generally known to the public; and (3) whether some of the information withheld under 7(E) can be segregated because it relates to health analysis rather than law enforcement techniques, as defined by the relevant case law.

"A district court may review documents *in camera* to determine whether they are exempt under FOIA, and if so, whether any reasonably segregable portions may be released." *ACLU v. F.B.I.*, 59 F. Supp. 3d 584, 589 (S.D.N.Y. 2014). "[I]f information contained in agency affidavits is contradicted by other evidence in the record . . . *in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information." *Id.* (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C.Cir.1987)). While *in camera* review is considered "the exception, not the rule," the Court

retains discretion as to when it is appropriate. *Id.* (quoting *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988)).

The Court hereby directs the FBI to submit the unredacted BAU Report for its *in camera* review. It shall do within 21 days of the date of this Opinion and Order.

### IV. Conclusion

For the foregoing reasons, the FBI's motion for summary judgment is DENIED. The New York Times's motion for summary judgment is likewise DENIED. Both motions are denied without prejudice to renewal following the Court's review of the BAU Report.

The Clerk of Court is directed to close the motions at ECF Nos. 20 and 24.

SO ORDERED.

Dated: August 9, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge